IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOWER HEALTH, f/k/a READING HEALTH SYSTEM; PI ONE, LLC, n/k/a BRANDYWINE HOSPITAL, LLC; PI TWO, LLC, n/k/a CHESTNUT HILL HOSPITAL, LLC; PI THREE, LLC, n/k/a JENNERSVILLE HOSPITAL, LLC; PI FOUR, LLC, n/k/a PHOENIXVILLE HOSPITAL, LLC; PI FIVE, LLC, n/k/a POTTSTOWN HOSPITAL, LLC; PI SIX, LLC, n/k/a TOWER HEALTH ENTERPRISES, LLC; and PI SEVEN, LLC, n/k/a TOWER HEALTH MEDICAL GROUP HOLDING COMPANY, LLC; : : : : : : : : : : : : : : Plaintiffs : : vs. : : CHS/COMMUNITY HEALTH SYSTEMS, INC.; PENNSYLVANIA HOSPITAL COMPANY, LLC; AND POTTSTOWN HOSPITAL COMPANY, LLC, : : : : : : Defendants : | CIVIL ACTION NO. 5:19-cv-2782 |

## AMENDED COMPLAINT

In connection with Plaintiffs' purchase of Pottstown Hospital from Defendants, Defendants have breached their Asset Purchase Agreement with Plaintiffs, resulting in substantial damages to Plaintiffs.

## PARTIES

1. Plaintiff Tower Health (Tower Health), formerly known as Reading Health System, is a Pennsylvania nonprofit corporation with its principal place of business at 420 S. Fifth Avenue, West Reading, Berks County, Pennsylvania.

2

2. Plaintiff Brandywine Hospital, LLC, formerly known as PI One, LLC (a Buyer Entity), is a Pennsylvania limited liability company with its principal place of business at 420 S. Fifth Avenue, West Reading, Berks County, Pennsylvania.

3. Plaintiff Chestnut Hill Hospital, LLC, formerly known as PI Two, LLC (a Buyer Entity), is a Pennsylvania limited liability company with its principal place of business at 420 S. Fifth Avenue, West Reading, Berks County, Pennsylvania.

4. Plaintiff Jennersville Hospital, LLC, formerly known as PI Three, LLC (a Buyer Entity), is a Pennsylvania limited liability company with its principal place of business at 420 S. Fifth Avenue, West Reading, Berks County, Pennsylvania.

5. Plaintiff Phoenixville Hospital, LLC, formerly known as PI Four, LLC (a Buyer Entity), is a Pennsylvania limited liability company with its principal place of business at 420 S. Fifth Avenue, West Reading, Berks County, Pennsylvania.

6. Plaintiff Pottstown Hospital, LLC, formerly known as PI Five, LLC (a Buyer Entity) is a Pennsylvania limited liability company with its principal place of business at 420 S. Fifth Avenue, West Reading, Berks County, Pennsylvania.

7. Plaintiff Tower Health Enterprises, LLC, formerly known as PI Six, LLC (a Buyer Entity), is a Pennsylvania limited liability company with its principal place of business at 420 S. Fifth Avenue, West Reading, Berks County, Pennsylvania.

8. Plaintiff Tower Health Medical Group Holding Company, LLC, formerly known as PI Seven, LLC (a Buyer Entity), is a Pennsylvania limited liability company with its principal place of business at 420 S. Fifth Avenue, West Reading, Berks County, Pennsylvania.

9. Plaintiffs Brandywine Hospital, LLC; Chestnut Hill Hospital, LLC; Jennersville Hospital, LLC; Phoenixville Hospital, LLC; Pottstown Hospital, LLC; Tower Health Enterprises,

LLC; and Tower Health Medical Group Holding Company, LLC are hereinafter referred to collectively as the "Buyer Entities."

10. Defendant CHS/Community Health Systems, Inc. (CHS) is owned by Community Health Systems, Inc., a for-profit, publicly-traded company, and is a Delaware corporation with its principal place of business at 4000 Meridian Boulevard, Franklin, Tennessee.

11. Defendant Pennsylvania Hospital Company, LLC (Seller Entity), is an affiliate and subsidiary of CHS, is a member of Pottstown Hospital Company, LLC, and is a Delaware limited liability company with its principal place of business at 4000 Meridian Boulevard, Franklin, Tennessee.

12. Defendant Pottstown Hospital Company, LLC (Seller Entity) is owned by Pennsylvania Hospital Company, LLC, is an affiliate and subsidiary of CHS, was formerly known as the Pottstown Memorial Medical Center (PMMC), and is a Delaware limited liability company with its principal place of business at 4000 Meridian Boulevard, Franklin, Tennessee.

## VENUE

13. Defendants have admitted that venue in this district is proper.

## JURISDICTION

14. Defendants removed this case from the Court of Common Pleas of Berks County, Pennsylvania based on 28 U.S.C. 1441 and 28 U.S.C. 1322(a).

## BACKGROUND

15. In 2003, CHS purchased PMMC, then a nonprofit hospital.

16. CHS operated and controlled PMMC from the date of its purchase to the date of its sale to Tower Health and the Buyer Entities, effective October 1, 2017.

17. Before July 5, 2016, under federal regulation, to qualify as a Medicare and Medicaid participating health care provider (Medicare/Medicaid Provider), the Centers for Medicare and

3

Case 5:19-cv-02782-EGS   Document 19   Filed 07/22/19   Page 4 of 13

Medicaid Services (CMS) required hospitals, such as PMMC's hospital facility, located at 1600 East High Street, Pottstown, PA (PMMC Hospital Facility), as a Condition of Participation (COP), to comply with the Life Safety Code (LSC) fire safety requirements set forth in the 2000 edition of the National Fire Protection Association 101 (NFPA 101 – 2000 ed.).

18.  Before July 5, 2016, to qualify as a Medicare/Medicaid Provider, the PMMC Hospital Facility and Defendants utilized a Fire Safety Evaluation System (FSES), pursuant to National Fire Protection Association 101A, Guide on Alternative Approaches to Fire Safety, 2001 edition (NFPA 101A – 2001 ed.), to provide an allegedly alternative and equivalent way to meet the LSC requirements of NFPA 101 – 2000 ed. and to allegedly meet the COP.

19.  The last FSES Defendants and the PMMC Hospital Facility utilized to allegedly provide an alternative and equivalent way to meet the LSC requirements of NFPA 101-2000 ed. and to allegedly meet the COP was dated 2009 for the PMMC Hospital Facility (2009 FSES).

20.  The 2009 FSES was inaccurate, incorrect, incomplete, and insufficient to support an alternative and equivalent way to meet the LSC requirements and to meet the COP, and the PMMC Hospital Facility was not in compliance in 2009 and thereafter.

21.  Defendants have admitted that, for the PMMC Hospital Facility, they never prepared and presented to the appropriate regulatory agencies another FSES after the time they prepared and presented the 2009 FSES.

22.  By federal regulation, effective July 5, 2016 (CMS Regulation), CMS required all participating health care providers, including the PMMC Hospital Facility, to comply with the LSC requirements in the 2012 edition of the National Fire Protection Association 101 – Life Safety Code (NFPA 101 – 2012 ed.) to qualify as Medicare/Medicaid Providers.

4

SL1 1577729V4 006375.01188

23.  Shortly after July 5, 2016, CMS notified participating health care providers that they could comply with NFPA 101 – 2012 ed., thus meeting the LSC requirements for certification as a Medicare and Medicaid participating healthcare provider, by submitting a FSES that complied with the 2013 edition of National Fire Protection Association 101A, Guide on Alternative Approaches to Life Safety (NFPA 101A – 2013 ed.).

24.  Through the CMS Regulation and the notifications, CMS invalidated all previous NFPA 101A – 2001 ed. FSES approvals and required hospitals seeking an LSC equivalency to resubmit them under National Fire Protective Association (NFPA) 101A, Guide on Alternative Approaches to Life Safety, 2013 Edition.

25.  Defendants have admitted that, for the PMMC Hospital Facility, they never submitted another FSES after their 2009 FSES submission.

26.  After July 5, 2016, the PMMC Hospital Facility was unable to meet the LSC requirements of NFPA 101 – 2012 ed.

27.  After July 5, 2016, the PMMC Hospital Facility was unable to meet the LSC requirements of NFPA 101A – 2013 ed. as an alternative and equivalent way to meet the LSC requirements of NFPA 101 – 2012 ed.

28.  On or about November 10, 2016, PMMC sent a Capital Expenditure Request to CHS to authorize the payment for the preparation of Life Safety Plans for the PMMC Hospital Facility "asap" that informed CHS that "[c]urrent Life Safety drawings are required and ours are way out of compliance."

29.  In connection with the preparation of the new Life Safety Plans for the PMMC Hospital Facility, on May 1, 2017, CHS's life safety architect, bda Architects, notified both CHS

5

and PMMC that the Pennsylvania Department of Health (DOH) required "current FSES forms that dovetail into the 2012 NFPA 101 Life Safety Code."

30. However, at no time after May 1, 2017 did CHS or PMMC ever obtain such an FSES for the PMMC Hospital Facility that dovetailed into the 2012 NFPA 101 Life Safety Code and never submitted such an FSES to the DOH or any regulatory agency.

31. In April 2017, bda Architects submitted for approval new Life Safety Plans to the Pennsylvania Department of Health (DOH) without a compliant FSES, but the DOH never approved such plans as Final Life Safety Plans.

32. Defendants never brought the PMMC Hospital Facility into compliance with the LSC requirements of NFPA 101 – 2012 ed.

## ASSET PURCHASE AGREEMENT

33. On or about May 30, 2017, CHS and certain Seller Entities entered into an Asset and Membership Interest Purchase Agreement (Asset Purchase Agreement) with Tower Health and the Buyer Entities.

34. A true and correct copy of the Asset Purchase Agreement and its amendments, without exhibits and schedules, is attached as Exhibit A.

35. The Execution Date of the Asset Purchase Agreement is May 30, 2017, and the Closing Date of the Asset Purchase Agreement (as amended) is on or before September 30, 2017. Both dates shall hereinafter be referred to collectively as the "Pertinent Dates."

36. Under the Asset Purchase Agreement, Tower Health and the Buyer Entities agreed to buy five hospitals from CHS.

37. Both Defendant Pennsylvania Hospital, LLC and Defendant Pottstown Hospital Company, LLC are Seller Entities and parties to the Asset Purchase Agreement.

38. One of the hospitals the Seller Entities and CHS agreed to sell – and later sold – to Tower Health and the Buyer Entities under the Asset Purchase Agreement was the PMMC Hospital Facility, now known as the Pottstown Hospital, a 7-story, high rise, 232-bed hospital located at 1600 East High Street, Pottstown, Pennsylvania.

39. At the Pertinent Dates, the PMMC Hospital Facility was classified as an existing, high-rise hospital under NFPA 101 – 2012 ed.

40. At the Pertinent Dates, the PMMC Hospital Facility was classified under NFPA 101 Building Construction Type and Height as a "seven-story building, with a basement and penthouse, Type II (000), unprotected non-combustible construction, which is fully sprinkled." This was never disclosed by Defendants to Plaintiffs before the Pertinent Dates.

41. At the Pertinent Dates, the PMMC Hospital Facility had no compliant FSES. This was never disclosed by Defendants to Plaintiffs before the Pertinent Dates.

42. At the Pertinent Dates, Defendants never disclosed to Plaintiffs that the 2009 FSES was inaccurate, incorrect, incomplete, and non-compliant.

43. On September 29, 2017, the Asset Purchase Agreement closed, effective October 1, 2017, and Defendants sold PMMC, along with four other hospitals, to Tower Health and the Buyer Entities, and Defendants were paid the agreed-upon purchase price.

44. CHS is a party to the Asset Purchase Agreement "for the purposes of guaranteeing the obligations of its subsidiaries or affiliates," as set forth in the Asset Purchase Agreement.

45. The Seller Entities, including Defendant Pennsylvania Hospital, LLC and Defendant Pottstown Hospital Company, LLC, were and are "subsidiaries and affiliates" of CHS, as set forth in the Asset Purchase Agreement.

7

46. Under Section 12.26 of the Asset Purchase Agreement, CHS "unconditionally and absolutely guarantee[d] the prompt performance and observance by the Seller Entities [including Pennsylvania Hospital Company, LLC and Pottstown Hospital Company, LLC] of each and every obligation, covenant and agreement of the Seller Entities arising out of, connected with, or related to, this Agreement . . . ."

47. CHS's guarantee obligation, according to the Asset Purchase Agreement, is a "continuing guarantee," and remains in effect today.

48. Under Section 12.17 of the Asset Purchase Agreement, Defendants' representations, warranties, covenants, and agreements in the Asset Purchase Agreement survive the consummation of the sale of the PMMC Hospital Facility to Plaintiffs.

49. Under Section 12.17 of the Asset Purchase Agreement, "notwithstanding any investigation" made by Plaintiffs either before or after the consummation of the Asset Purchase Agreement, Plaintiffs are and were entitled to rely upon the Seller Entities' representations, warranties, covenants, and agreements in the Asset Purchase Agreement.

## CMS VALIDATION SURVEY

50. On or about March 14, 2018, just months after Plaintiffs' purchase of the PMMC Hospital Facility, the Pennsylvania Department of Health (DOH), on behalf of CMS, conducted an "unannounced Medicare Sample Validation Survey" of the Pottstown Hospital (DOH Validation Survey), conducted a fire safety survey, and determined that Pottstown Hospital was not in compliance with the LSC requirements of the NFPA 101 – 2012 ed. for an existing acute care health care hospital, as required by 42 C.F.R. § 482.41(b).

51. Among the compliance deficiencies the DOH identified was the failure to comply with K Tags 0161, 0211, 0225, 0311, 0325, 0353, 0355, 0363, 0371, 0754, and 0920 (K Tag Deficiencies).

8

52. Each of the K Tag Deficiencies existed at the PMMC Hospital Facility on the Pertinent Dates.

53. None of the K Tag Deficiencies was disclosed to Plaintiffs on the Schedules to the Asset Purchase Agreement.

54. Among the compliance deficiencies identified, DOH "determined that the facility failed to maintain building construction requirements, such as a minimum two-hour fire resistive rating of structural components throughout the building, affecting the entire component."

55. Through a letter dated June 25, 2018, CMS notified the Pottstown Hospital that, among other things, the Pottstown Hospital was not in compliance with a number of federal regulations, including 42 C.F.R. § 482.41, which requires compliance with the LSC requirements of NFPA 101 – 2012 ed.

56. CMS notified the Pottstown Hospital that it failed to comply with certain Medicare Conditions of Participation.

57. CMS removed the deemed status of the Pottstown Hospital and placed the Pottstown Hospital under State survey agency jurisdiction.

58. CMS required the Pottstown Hospital to submit a Plan of Correction to DOH to correct each of the K Tag Deficiencies that violated the Medicare Conditions of Participation.

59. CMS warned the Pottstown Hospital that its failure to "achieve compliance with the Conditions of Participation . . . set forth in an acceptable plan of correction will result in the initiation of action to terminate your facility from the Medicare program."

60. Between the time of Plaintiffs' purchase of the PMMC Hospital Facility on October 1, 2017 and the time of the DOH Validation Survey, Plaintiffs had done nothing to alter

9

the condition of the Pottstown Hospital to cause the hospital to fail the LSC requirements under 42 C.F.R. § 482.41 and otherwise.

61. Recently DOH approved Plaintiffs' submitted Plan of Correction, which will cost a substantial sum of money to implement.

### COUNT I V. ALL DEFENDANTS

62. All the previous paragraphs are incorporated herein as if set forth in full.

63. Under Section 11.2 of the Asset Purchase Agreement, Defendants' breaches of the Asset Purchase Agreement require Defendants to indemnify Plaintiffs for all damages, costs, and expenses (including, without limitation, reasonable attorneys' fees, court costs, costs of appeal, and expert consultants and witnesses) Plaintiffs incur as a result of Defendants' breaches of the Asset Purchase Agreement.

64. In connection with the PMMC Hospital Facility, Defendants have breached certain representations and warranties of the Asset Purchase Agreement, including but not limited to:

    (a)  3.4 <u>Financial Statements</u>;

    (b)  3.5 <u>Absence of Certain Changes</u>;

    (c)  3.6 <u>Licenses</u>;

    (d)  3.7 <u>Medicare Participation/Accreditation</u>;

    (e)  3.8 <u>Regulatory Compliance</u>; and

    (f)  3.10 <u>Real Property</u>.

65. Under Section 12.26 of the Asset Purchase Agreement, CHS guaranteed the performance and observance by the Seller Entities of each obligation, covenant, and agreement related to the Asset Purchase Agreement, including those set forth in Paragraph 64 above.

66. Plaintiffs have performed all the required conditions precedent under the Asset Purchase Agreement.

67. Defendants' breaches of the Asset Purchase Agreement have caused, and will cause, damages to Plaintiffs of a substantial sum of money to implement the Plan of Correction.

WHEREFORE, Plaintiffs ask for the entry of judgment against all Defendants, jointly and severally, for an amount in excess of $75,000 (exclusive of interest and costs), plus attorneys' and expert fees.

### COUNT II V. ALL DEFENDANTS

68. All the previous paragraphs are incorporated herein as if set forth in full.

69. In connection with the PMMC Hospital Facility, Defendants have breached certain covenants of the Asset Purchase Agreement, including but not limited to:

  (a)  5.2 Operations;

  (b)  5.3 Negative Covenants; and

  (c)  5.4 Governmental Approvals.

70. Under Section 12.26 of the Asset Purchase Agreement, CHS guaranteed the performance and observance by the Seller Entities of each obligation, covenant, and agreement related to the Asset Purchase Agreement, including those set forth in Paragraph 69 above.

71. Plaintiffs have performed all the required conditions precedent under the Asset Purchase Agreement.

72. Defendants' breaches of the Asset Purchase Agreement have caused, and will cause, damages to Plaintiffs of a substantial sum of money to implement the Plan of Correction.

WHEREFORE, Plaintiffs ask for the entry of judgment against all Defendants, jointly and severally, for an amount in excess of $75,000 (exclusive of interest and costs), plus attorneys' and expert fees.

### COUNT III V. ALL DEFENDANTS

73. All the previous paragraphs are incorporated herein as if set forth in full.

74. Defendants breached the Asset Purchase Agreement by selling the PMMC Hospital Facility to Plaintiffs in a noncompliant condition on the Pertinent Dates that violated certain laws and codes.

75. Plaintiffs have performed all the required conditions precedent under the Asset Purchase Agreement.

76. Defendants' breaches of the Asset Purchase Agreement have caused, and will cause damages to Plaintiffs of a substantial sum of money to implement the Plan of Correction.

WHEREFORE, Plaintiffs ask the Court to enter judgment against all Defendants, jointly and severally, for an amount in excess of $75,000 (exclusive of interest and costs), plus attorneys' and expert fees.

## COUNT IV V. DEFENDANT CHS

77. All the previous paragraphs are incorporated herein as if set forth in full.

78. As set forth above, CHS has guaranteed the obligations of the Seller Entities, including Defendants Pennsylvania Hospital Company, LLC and Pottstown Hospital Company, LLC.

79. CHS is liable for any and all of the Seller Entities' breaches of the Asset Purchase Agreement, including those described above, to Plaintiffs.

80. Any verdicts and judgments against Defendant Pennsylvania Hospital, LLC and/or Defendant Pottstown Hospital Company, LLC must be paid by CHS.

WHEREFORE, Plaintiffs ask the Court to enter judgment against Defendant CHS for any breaches by and verdicts and judgments against Defendant Pennsylvania Hospital, LLC and/or Defendant Pottstown Hospital Company, LLC, for an amount in excess of $75,000 (exclusive of interest and costs), plus attorneys' and expert fees.

## COUNT IV V. ALL DEFENDANTS

81. All the previous paragraphs are incorporated herein as if set forth in full.

82. Under Section 12.5 of the Asset Purchase Agreement, because Defendants have required Plaintiffs to file this lawsuit to enforce the provisions of the Asset Purchase Agreement, Plaintiffs are entitled to recover from Defendants all their legal expenses, including without limitation, reasonable attorneys' fees, costs, and necessary disbursements.

WHEREFORE, Plaintiffs ask the Court to enter judgment against Defendants, jointly and severally, for an amount in excess of $75,000 (exclusive of interest and costs), plus attorneys' and expert fees.

Date: July 22, 2019

STEVENS & LEE, P.C.

By: _____
Daniel B. Huyett
PA ID 21385
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
Telephone: (610) 478-2000
Facsimile: (610) 988-0803
E-mail: dbh@stevenslee.com

Joseph E. Wolfson
PA ID 44431
1818 Market Street, 29th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 751-1249
Facsimile: (610) 988-0808
E-mail: jwo@stevenslee.com

*Attorneys for Plaintiffs*